SO ORDERED: August 13, 2018.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BRENT DEE HOLT ) | |
| HEATHER LEANN HOLT ) | CASE NO. 17-2447-RLM-7A |
| ) | |
| Debtors ) | |
| ) | |

**ORDER DENYING DEBTORS' MOTION TO CONVERT**

The debtors ("Brent" and "Heather" or "the debtors") filed this chapter 7 case on April 6, 2017 as a joint case. The debtors' residence is located at 3421 Bay Road North Drive, Indianapolis, Indiana ("Bay Road property" or "property"). Brent owns this property in fee simple. Heather owns property in fee simple located at 18821 Orleans Court, Noblesville, Indiana. The Orleans Court property was not at issue in the present matter.

1

Schedules A and D assign the Bay Road property a fair market value of $215,000.00. It was purchased in 2013 for $256,833 from Brent's mother's estate, according to the schedules. Schedule D shows that Seterus has a mortgage of $208,697.90. Brent claimed a homestead exemption of $6302.10 but later amended it to claim the full exemption of $19,600.

The 341 meeting was scheduled for May 16, 2017. Tom Krudy ("Krudy" or "the trustee"), the chapter 7 trustee, issued a notice of possible assets on July 18, 2017, naming only the equity in the Bay Road property and funds on deposit as assets. Krudy conducted a Rule 2004 exam of the debtors on August 18, 2017 at the Bay Road property and the debtors were ordered to produce mortgage documentation seven (7) days before the Rule 2004 exam. The documentation requested included recent appraisals and tax assessments. The debtors filed a couple of motions to defer the discharge, in order to file reaffirmation agreements. Brent and Seterus filed a reaffirmation agreement on November 22, 2017 that provided that the balance of the mortgage as of the petition date was $202,029. The amount being reaffirmed was slightly more than that, $202,154. Heather also filed a reaffirmation agreement with BMO Harris as to her Orleans Court property.

Krudy filed his motion for turnover on January 5, 2018, asking only for the equity in the Bay Road property. The debtors objected on the basis that they believe that the trustee overstated the value of the Bay Road property and that there was not sufficient non-exempt equity in it to create an estate asset. Hearing on the trustee's motion and the debtors' objection was scheduled for February 15, 2018, but continued several times, with the final continued hearing date set for July 12, 2018. The debtors filed their motion to convert to chapter 13 on July 10, 2018, prior to the scheduled hearing on the trustee's turnover motion. The trustee filed his objection to the debtors' motion to convert on July 11, 2018 and this matter was heard by the Court on July 26, 2018.

## The Motion To Convert

The trustee contends there is no absolute right to convert to a chapter 13 and the conversion was filed in bad faith because the Bay Road property is worth $570,000. The trustee attached both the debtors' "market analysis" and the trustee's appraisal to his objection.

At the evidentiary hearing, it was established the Bay Road property is located in the Nantucket Bay community. It is located on a prestigious lake and this lakefront location is a premium for the area. It is a 34-year old, 2700 square foot single family home with 2 bedrooms, 2-1/2 baths, a 2-car garage, walkout basement and 2 fireplaces. The house has not been well-maintained. It shares a common wall with its neighbor as many, but not all, of the other houses in this neighborhood do.

The debtors' market analysis states on its face that it was conducted on May 16, 2014, almost 3 years before this bankruptcy was filed. Heather testified this is an error and it was completed in 2015. There was no explanation of why the market analysis was done two or three years before the bankruptcy filing, nor an opportunity to verify her statement as to a hearsay document. Fife Real Estate and Auction Service conducted the market analysis and the stated opinion of the market value of the property was determined to be $215,000 using the comparative sales approach. Mr. Fife did not testify but Heather stated he inspected the house. It is unexplained if he inspected the house why he only provided exterior photos. He declared the residence to be in "fair" condition. The net assessed value of the property in 2013 was $234,565 and had trended up for 2011, 2012 and 2013, according to the tax report. Heather testified the property has continued to trend upward on Zillow, an online home value site. Little weight can be attached to the county tax assessment since there was no explanation of how the gross value of $405,600 was determined and what caused the reduction to $234,565, nor how that relates to the actual market value of the real estate on the date of filing of the petition. All of the Fife comparables are located in another neighborhood entirely

3

(Lakes at the Crossing), which is substantially less attractive to buyers. There were no "adjustments" shown from the comparables to the Bay Road property and all three comparables were sales that closed five to six years before this bankruptcy was filed. It should be noted that the market analysis was not an appraisal, it was stale, and its "comparables" were not relevant in time, location, nor lot characteristics. These factors are obvious upon even a cursory review of the market analysis.

The Trustee's appraisal was conducted at a later date but was performed and reported as of April 10, 2017 (4 days after this bankruptcy case was filed) by Integra Realty Resources. The purpose of the appraisal was to "develop an opinion of the market value of the fee simple interest in the property as of the effective date of the appraisal." The fair market value was determined to be $570,000 using a detailed comparative sales approach. Integra's appraiser, Mr. Lady, inspected both the interior and the exterior of the property and provided multiple photographs of the exterior and of all rooms of the house. It noted that the estimated cost to repair the wood deck and enclosed porch was $13,500 and that the estimated cost to replace the windows was $19,000. Both of these estimates were considered in the valuation process.

Lady used three comparable sales to arrive at the fair market value. All of the three comparable sales are on the same road as the property, but the directional assignment in the street names reflects whether one turns right or left coming into the housing development. All three comparable sales were in the same community, were located on lakefront property, and were located within .34 miles or less from the property. All three sales closed between June 2016 and August 2017. The one comparable (3313 Bay Road North Drive) is located within several houses of the subject property and shares a common wall with its neighbor. The appraiser noted that its condition was superior to the subject property with a better view, among other downward adjustments, resulting in a reduction from the sales price of $650,000 (slightly more than asking price) to $572,500. The two other comparables

4

were less than a third of a mile away, and both are unattached single family dwellings, unlike the subject property. They both have more bedrooms and bathrooms and are of average (3714 Bay Road South Drive) to superior (3264 Bay Road South Drive) condition. Downward adjustments were made on both properties: 3714 Bay Road South Drive sold for $599,000, adjusted downward to $571,000 and 3264 Bay Road South Drive sold for $720,000, adjusted downward to $557,000. The average of these adjusted values was further adjusted by a 3% time adjustment, differences in porches and patio areas, bathrooms, and overall amenities to arrive at the $570,000 value.

## DISCUSSION

11 USC §706(a) provides:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable….
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

In *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), the Supreme Court of the United States held there was a "bad faith" exception to the alleged "absolute right" under §706(a) to convert a chapter 7 case to a case under chapter 13. The court arrived at this conclusion by noting that §706(a) is subject to §706(d) which limits the cases that may be converted to another chapter to those under which the debtor qualifies to be a debtor.

There are two ways that a debtor may not qualify as a chapter 13 debtor. The first is under the debt limits of 11 USC §109(e). The schedules filed in this case show the debtors have regular income and do not exceed §109(e)'s debt limits.

5

The second way a debtor may not qualify as a chapter 13 debtor involves "cause" under 11 USC §1307(c). That section lists numerous "causes" for involuntarily converting or dismissing a chapter 13 case and "cause" has been judicially extended to include the non-enumerated debtor's "bad faith". *Marrama* reasoned that "in practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to a chapter 7 because of pre-petition bad-faith conduct, including fraudulent acts committed in an earlier chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under chapter 13. That individual, in other words, is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *Marrama,* 549 U.S. at 1111. While this conflates chapter-specific eligibility requirements with reasons why a chapter 13 case should be involuntarily converted or dismissed, it would be futile to allow the chapter 7 case to convert to chapter 13 when the debtor's bad faith would warrant conversion of the case back to chapter 7 under §1307(c). There is no purpose served in going through the process of conversion and re-conversion.

Good faith is a difficult term to define precisely, and this court has the responsibility to determine if these debtors filed this case in good faith after considering the "totality of circumstances". *In re Love*, 957 F.2d 1350, 1355 (7th Cir.1992); *In re Killian*, 529 B.R. 257, 263 (C.D.Ill., 2013). Courts have applied a "totality of the circumstances" test in determining whether a motion to convert a chapter 7 to a chapter 13 should be denied for bad faith, similar to the test used in determining whether a chapter 13 case should be dismissed for bad faith under §1307(c). Factors include whether the debtor has stated debts and expenses accurately, whether the debtor made any fraudulent representation to mislead the court, and whether he has unfairly manipulated the bankruptcy code. *In re Johnson*, 228 B.R. 663, 668-669 (Bankr. N. D. Ill. 1999).

Debtors use the Fife market analysis to show they had a good faith basis for stating the value of the residence at $215,000. The Fife market analysis is dated

6

May 16, 2014.  Heather testified this was an error, not corrected prior to the hearing in July 2018.  It seems highly unlikely that Heather's testimony is truthful, given that the date in the body of the cover letter, directed to debtors' bankruptcy counsel, is restated as May 16, 2014.  Also, the "printed as of" date on the Marion County Tax Report was May 15, 2014, which would require Fife to have printed the report a year before he even got the assignment.  The data in the report was as of June 19, 2013, so the market analysis relies upon data that was 4 years old at the time of the bankruptcy case filing.  It is universally known that the real estate market was recovering from the recession during this time.  The debtor purchased the property from Brent's mother's estate for $40,000 more than debtors valued the property in their petition some 4 years later.  This case is not one of total concealment of an asset but rather the obvious, intentional, and significant underrepresentation of value of the largest asset in the bankruptcy estate.  If the trustee had not been astute enough to recognize the grossly underreported value of the real estate, somewhere north of $300,000 of estate assets would have been hidden.  This sort of intentional misrepresentation of value is likely the easiest way for a debtor to escape detection.

  Another large hurdle for the debtors' request to convert is the implausibility of proposing a confirmable chapter 13 plan and denial of confirmation is a cause for dismissal or conversion under 11 USC §1307(c)(5).  The debtors show negative monthly income in both their original schedules, the first amendments filed on June 8, 2017, and the second amendments filed on February 7, 2018, after backing out the Bay Road mortgage payment ($1557.43/ mo).  They also show a negative monthly income in Brent's reaffirmation agreement with Seterus on November 22, 2017.  Even if one assigns a conservative value of $450,000 for the Bay Road property, back out the mortgage balance as of the petition date as per the reaffirmation agreement (approximately $202,000) and back out Brent's homestead exemption ($19,300) there still is roughly $228,700 in equity for the Bay Road property alone.  The Orleans property was valued at $107,000 and that

7

reaffirmation agreement says the mortgage balance as of the petition date was roughly $94,000. Heather cannot claim a homestead exemption in that property and thus only her "catchall"/ other real property exemption is available. She claimed a $3K exemption. That leaves roughly $10,000 in equity.

The claims bar date has passed and creditors have filed claims of $179,739.64. LOR Corporation's unsecured claim relates to a business lease and its claim dwarfs all other claims. The debtors have filed an objection to the LOR Corporation proof of claim, stating that the default judgment upon which the claim is based is not *res judicata.* Debtors did not indicate in their schedules that this debt is contested. Assuming that the debt can be reduced through negotiation or litigation, the debtors still have the problem of the liquidation test with little to no income to pay into a chapter 13 plan, which would have to be a 100% plan. Even if the debtors try to cut their expenses as stated on their schedule J, it is extremely unlikely they can propose a confirmable plan sufficient to contribute at least as much as what creditors would receive in a chapter 7 liquidation. Their expenses include mostly unalterable items such as condo fees of $450/month, 2 mortgage payments totaling $2500, and other unalterable expenses such as utilities, food, car insurance, and transportation. Heather briefly offered testimony that she had improved her earnings but her Schedule I has not been amended.

In this court's opinion, the debtors have crossed the line into the realm of bad faith under *Marrama*, and its progeny. The intentionality of their deceit on their schedules and to the court cannot be disputed, in the court's opinion. The misstatements were significant, intentional, and include erroneous statements not only in their schedules but also under oath to the court. Their ability to propose a confirmable plan under §1307(c)(5) is highly questionable considering they claim to have no disposable income. The court acknowledges that incomes and expenses change in this process, depending upon the advantage to the debtors and real life circumstances, but funding a 100% chapter 13 plan appears too high a hurdle for the debtors to overcome.

The bad faith in the filing of this chapter 7 bankruptcy petition along with the inaccuracies stated in sworn courtroom testimony are enough, in this court's opinion, to deny the conversion. Debtors cannot be permitted to knowingly swear to falsehoods in the hope that they can "slide by" but have the backstop of a chapter 13 conversion to buy time, possibly reconsider their statements of incomes and debt, and attempt to make a plan work. It is unequivocally better for the creditors in this case for it to remain as a chapter 7 case. They will be paid 100 cents on the dollar quickly, and the debtors will likely have equity after paying all of their creditors. Even without the bad faith finding, it would be futile to convert their case to a chapter 13 when it would be reconverted back to a chapter 7 under §1307(c)(5).

Accordingly, the Trustee's objection is sustained, and the debtors' motion to convert to chapter 7 is denied.

#        #        #